# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

UNITED STATES OF AMERICA           CRIMINAL ACTION NO. 03-50103
                                      (CIVIL ACTION NO. 04-2523)

VERSUS                             JUDGE S. MAURICE HICKS, JR.

ANDREW D. KELLY

## MEMORANDUM RULING

Before the Court is Andrew D. Kelly's ("Kelly") motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. <u>See</u> Record Document 42. Based on the following, Kelly's motion is **DENIED**.

## I.      FACTUAL BACKGROUND.

In December 2002, the Shreveport Police Department received information that Kelly was known to purchase powder cocaine and manufacture it into crack cocaine. On December 9, 2002, the Shreveport Police Department conducted a controlled purchase of drugs from Kelly. When Kelly arrived at the designated location, the police conducted a traffic stop. Kelly exited his vehicle and was detained by the police. A search of Kelly's vehicle revealed 70.4 net grams of crack cocaine and 184.74 net grams of powder cocaine. Police also found a loaded semiautomatic pistol under the driver's seat of Kelly's vehicle. Kelly was not arrested on December 9, 2002 and agreed to work with the Shreveport Police Department in making narcotic purchases from other drug traffickers.

Yet, on June 9, 2003, Kelly was placed under surveillance after the Shreveport Police Department received intelligence that he was dealing crack cocaine on his own and not under the guidance and surveillance of the police. Law enforcement witnessed Kelly

visiting known drug locations and he appeared to hiding narcotics. Kelly was stopped and placed under arrest. A search of Kelly's vehicle revealed 23.01 net grams of crack cocaine, 4.44 grams of powder cocaine, and 11.18 net grams of marijuana. A loaded semiautomatic pistol was also found in Kelly's car.

On June 23, 2003, local law enforcement received information that Kelly had bonded out of jail and was once again distributing crack cocaine. Law enforcement went to Kelly's residence, observed him cutting up a large rock of crack cocaine, and arrested him. Officers seized 71.04 grams of crack cocaine. Kelly was allowed to cooperate with law enforcement and was not arrested. However, the case was later transferred to the United States Attorney's Office and was prosecuted.

## II.   PROCEDURAL HISTORY.

On September 24, 2003, a federal grand jury returned an eight count indictment against Kelly. See Record Document 7. The counts included possession with intent to distribute fifty (50) grams or more of crack cocaine on December 9, 2002; possession of a firearm during a drug trafficking crime on December 9, 2002; possession of a firearm by a convicted felon on December 9, 2002; possession with intent to distribute five (5) grams or more of crack cocaine on June 9, 2003; possession of a firearm during a drug trafficking crime on June 9, 2003; possession of a firearm by a convicted felon on June 9, 2003; possession with intent to distribute fifty (50) grams or more of crack cocaine on June 23, 2003; and forfeiture of two firearms.

On February 9, 2004, the Court denied Kelly's motion to suppress. See Record Document 31. On February 27, 2004, pursuant to a written plea agreement, Kelly pled guilty to Count One of the indictment (possession with intent to distribute fifty (50) grams

or more of crack cocaine on December 9, 2002) and Count Two of the indictment (possession of a firearm during a drug trafficking crime on December 9, 2002). <u>See</u> Record Documents 34-36. Kelly was sentenced on August 2, 2004 to 151 months imprisonment as to Count One and 60 months imprisonment as to Count Two. <u>See</u> Record Document 39. The terms of imprisonment are to run consecutively. <u>See id.</u>

## III.    LAW AND ANALYSIS.

The government argues that Kelly's section 2255 claims cannot be presently considered. "Challenging a conviction and sentence with a section 2255 motion is fundamentally different from a direct appeal." <u>United States v. Samuels</u>, 59 F.3d 526, 528 (5th Cir. 1995). The Fifth Circuit has held:

> Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding.

<u>United States v. Vaughn</u>, 955 F.2d 367, 368 (5th Cir. 1992) (citations omitted). Kelly "may not raise an issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for [his] procedural default, and 'actual prejudice' resulting from the error." <u>United States v. Shaid</u>, 937 F.2d 228, 232 (5th Cir. 1991) (citation omitted).

To establish "cause," Kelly must show some external impediment prevented him from raising the claim on direct appeal. <u>See United States v. Flores</u>, 981 F.2d 231, 235 (5th Cir. 1993). In order to meet the "actual prejudice" test, Kelly must demonstrate substantial prejudice, such that the integrity of the entire proceeding is infected. <u>See</u>

<u>Shaid</u>, 937 F.2d at 233.  Further, Kelly may not raise any constitutional errors in his section 2255 motion unless he establishes that "the error could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice." <u>Id.</u> at 232 (citation omitted).

Kelly has neglected to show cause for his failure to file a direct appeal or actual prejudice resulting from his error.  Moreover, he has not established that the alleged errors would result in a complete miscarriage of justice, as he has failed to prove his actual innocence.  <u>See</u> <u>Flores</u>, 981 F.2d at 236 (stating that without a colorable showing of factual innocence, a defendant fails to show a fundamental miscarriage of justice).  However, in an abundance of caution, the Court will proceed to the merits of Kelly's section 2255 claims.

Kelly makes four section 2255 claims: (1) unfair sentence based on the federal sentencing guidelines; (2) unfair plea bargain; (3) inadequate counsel; and (4) falsely charged relative to a gun possession charge.  The Court will now examine each claim individually.

**A.     Unfair Sentence Based On The Federal Sentencing Guidelines.**

Kelly argues that he received an excessive and unfair sentence under the federal sentencing guidelines.  Specifically, he alleges that he "should have been allowed to plea out to a level 26 drug offense and given 3 points for accepting responsibility."  Record Document 42 at 5.

At the outset, the Court notes that Kelly did, in fact, benefit from a three point reduction in his offense level due to acceptance of responsibility.  <u>See</u> Presentence Investigation Report, ¶20.  Further, a district court's technical application of the United

States Sentencing guidelines does not give rise to a constitutional issue cognizable under section 2255.  See United States v. Segler, 37 F.3d 1131,1134 (5th Cir. 1994); United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  The alleged failure to give extra points for accepting responsibility does not implicate any constitutional issues. See Segler, 37 F.3d at 1134 (citing United States v. Faubion, 19 F.3d 226, 233 (5th Cir. 1994)).  In addition,  the sentencing issues could have been raised on direct appeal, but it appears from the record that Kelly did not directly appeal his sentence. See Vaughn, 955 F.2d at 368 (a nonconstitutional claim that could have been raised on direct appeal, but was not, may not be raised in a collateral proceeding).  Accordingly, Kelly is not entitled to section 2255 relief as to these claims.

**B.      Unfair Plea Bargain.**

Kelly contends that he received an excessive and unfair plea bargain because he "did not have the amount of dope that [he] pled to."  Record Document 42 at 5.  On February 27, 2004, Kelly pled guilty to Counts One and Two of the indictment filed in the case.  Record Documents 34-36.  He also signed a document entitled "Understanding of Maximum Penalty and Constitutional Rights" which stated, "I realize that by pleading guilty I stand convicted of the crime charged . . . . I further declare that my plea in this matter is free and voluntary . . . and that the only reason I am pleading guilty is that I am in fact guilty as charged."  Record Document 36.

In addition, the Court's realtime notes reflect that Kelly pled guilty to distributing and possessing with intent to distribute more than 50 grams of cocaine.  Kelly argued at sentencing that he possessed 55 grams of cocaine rather than 75 grams.  According to the Court's realtime notes, the Court asked the Defendant and his counsel whether, despite

the discrepancy, Kelly still wanted to admit and plead guilty to distributing 50 grams or more of a substance containing crack cocaine. Kelly answered in the affirmative. Further, both the Court's realtime notes and Kelly's signed plea agreement reflect that he entered into the plea "freely, knowingly, and voluntarily with no threats or coercion." Record Document 36.

Kelly has presented no evidence to contradict his signed plea agreement and verbal acceptance of responsibility for his actions. Documents signed by the defendant at the time of the guilty plea are entitled to "great evidentiary weight." United States v. Abreo, 30 F.3d 29, 32 (5th Cir. 1994). All the documents mentioned above, as well as the Court's realtime notes, clearly indicate that Kelly was aware that he was pleading guilty to Count One of the indictment, knowingly and intentionally possessing with intent to distribute 50 grams or more of crack cocaine.[1]

### C.    Inadequate Counsel.

Kelly alleges that he was the "victim" of ineffective assistance of counsel because his attorney "did not adequately inform [him] of what [he] was pleading out to." Record Document 42 at 6. Kelly contends that his attorney only came to visit him twice and that she coerced him into signing the plea agreement. See id.

To prevail on a claim of ineffective assistance of counsel, Kelly must prove (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that his counsel's ineffective assistance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984); Bryant v. Scott, 28 F.3d 1411, 1414-1415 (5th Cir. 1994).

---

[1]Even if Kelly's allegation that he possessed 55 grams instead of 75 grams is true, his guilty plea remains accurate as 55 grams is more than 50 grams.

Under the first prong on the Strickland analysis, the Court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. The defendant may overcome this presumption only by showing that under the "totality of the circumstances" the attorney's performance was "outside the wide range of professionally competent assistance." Id. at 690, 104 S.Ct. at 2066.

Under the second prong of the Strickland test, the defendant must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. To satisfy the prejudice prong of the Strickland test in the context of a non-capital sentencing proceeding, Kelly must establish "a reasonable probability that, but for the deficient performance of counsel, his sentence would have been significantly less harsh." United States v. Seyfert, 67 F.3d 544, 548 (5th Cir. 1995). If Kelly fails to establish either prong of the Strickland test, then his claim of ineffective assistance of counsel must fail.

Kelly has not provided the Court with any evidence to support any of his ineffective assistance of counsel claims. Likewise, there is simply nothing in the record to carry his contentions. Rather, both the documents signed by the defendant and the Court's realtime notes contradict his claims. First, the signed plea agreement repeatedly states that by signing Kelly acknowledges he understands the charges against him and the possible consequences of those charges. Record Document 35, ¶ 1-3. It additionally states that the plea was entered into by Kelly, "freely, knowingly, and voluntarily *with no threats or*

*coercion*, after *due consultation with counsel*." Record Document 35, ¶ 11 (emphasis added). This directly contradicts Kelly's claim that his counsel did not adequately inform him of the implications of the plea bargain and did not spend a sufficient amount of time consulting him regarding the charges as well as claims that he was coerced into signing the plea agreement.

The Court's realtime notes reflect that the Court asked Kelly directly if he had a chance to fully discuss with his counsel the charges in the indictment to which he intended to plead guilty. The Defendant answered in the affirmative. Kelly also indicated that he had not been coerced by anyone in the courtroom including his attorney.

Simply put, Kelly has not provided any evidence to confirm his allegations nor to refute the Court's record. The Fifth Circuit has stated:

> Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. . . . [M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding.

Ross v. Estelle, 694 F.2d 1008, 1011-1012 (5th Cir. 1983) (citations omitted). Kelly has failed to satisfy either prong of the Strickland test. As to cause, he has neglected to present any evidence to overcome the presumption that his attorney's actions were encompassed within the wide range of reasonable competence and fell under the ambit of strategy. As to prejudice, he has presented no evidence establishing that his attorney's actions were so serious as to render the proceedings unreliable and fundamentally unfair. Accordingly, Kelly's ineffective assistance of counsel claims are without merit.

### D. Falsely Charged Relative To A Gun Possession Charge.

Finally, Kelly maintains that he was "falsely charged relative to a gun possession

charge" because he "did not have either the dope or the gun that [he] was charged with having." Record Document 42 at 6. Kelly seems to be arguing that he did not possess a firearm during a drug trafficking crime on December 9, 2002 – a crime he plead guilty to on February 27, 2004.

In his signed plea agreement, Kelly pled guilty to Count Two of the indictment which clearly states, "Andrew D. Kelly, did knowingly and intentionally possess a firearm in furtherance of a drug trafficking crime." Record Document 7. The Court's realtime notes also indicate that Kelly specifically admitted to being in possession of a gun at the time of his arrest, even informing officers where they could find the gun. Thus, the record clearly indicates that Kelly was aware he was pleading guilty to Count Two of the Indictment.

As cited above, documents signed by the defendant at the time of the guilty plea are entitled to "great evidentiary weight," Abreo, 30 F.3d at 32. In addition, "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." Ross, 694 F.2d at 1011-1012. Therefore, since Kelly provides no evidence to support his claim and his claim is clearly contradicted by the record, his claim that he was falsely charged relative to a gun possession charge fails.

## IV.    CONCLUSION.

Kelly's various complaints regarding his sentence, plea bargain, ineffective assistance of counsel, and gun charge under section 2255 fail. Therefore, his motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Record Document 42) is **DENIED**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 31st day of May, 2006.

_____

S. MAURICE HICKS, JR.

UNITED STATES DISTRICT JUDGE